IN THE MATTER OF LAMONT MADISON

Docket No. 76257. Submitted January 17, 1985, at Detroit.—Decided February 25, 1985. Leave to appeal granted, 422 Mich —.

Lamont Madison, a juvenile, over a two-year period pled guilty in the Juvenile Division of the Wayne Probate Court to various charges. In each instance he was placed on probation. Thereafter Madison was charged with probation violation and several new offenses. When Madison failed to appear at a pretrial hearing on the probation violation charge, the probate court issued an order of apprehension. Madison was apprehended and placed in the Wayne County Youth Home. More than 48 hours later, Madison was brought before a juvenile court referee for a pretrial hearing and was thereafter returned to the youth home, although there had not been a determination of probable cause to believe that Madison had violated probation or that further incarceration was necessary and Madison's mother had not been informed of the right to have him released on bond. Fifty-three days later, following a hearing, a referee recommended that Madison's probation be revoked and that he be committed to Maxey Boys Training School. On a petition for review, the probate court, Y. Gladys Barsamian, J., affirmed the referee's recommendation. Madison appealed. *Held:*

1. The issues relating to the original determination which resulted in the order of probation were not properly raised in this appeal of the order revoking probation.

2. Under the Juvenile Court Rules, Madison should have been given a hearing within 48 hours after his apprehension. At that hearing there should have been a determination of probable cause to believe he committed a serious offense against society or another person before further detention was

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children § 60.
[2] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 31, 35.
[3] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children § 16.
[4] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children § 13.

ordered. Further, Madison's mother should have been informed of the right to a bond.

3. The failure to comply with the Juvenile Court Rules or to otherwise satisfy due process requirements does not mandate the setting aside of a probation revocation where prejudice has not been shown. Prejudice was not shown in this case, and nothing would be served by remanding for further proceedings.

Affirmed.

1. APPEAL — CRIMINAL LAW — PROBATION — REVOCATION OF PROBATION.

The appeal of right by a juvenile from an order finding that the juvenile was in violation of a prior order of probation is limited to those matters relating to the probation violation proceedings; the juvenile is not entitled in the appeal of the order revoking probation to challenge the validity of the underlying disposition which led to the imposition of probation.

2. INFANTS — INCARCERATION — PROBABLE CAUSE — PROBATION — JUVENILE COURT RULES.

A juvenile who is apprehended pursuant to a writ of apprehension for failure to appear at a probation revocation hearing in juvenile court is entitled to a preliminary hearing within 48 hours after being taken into custody; at that hearing it shall be determined whether his detention should be continued; upon a determination that there is probable cause to believe that the juvenile has committed a serious offense, the court may order detention of the juvenile at an approved facility, however, the court shall advise the parent of the right to bond; the same procedure applies where the juvenile is apprehended for a probation violation (JCR 1969, 3.1[A][2], 4.2[B], 9.2).

3. INFANTS — JUVENILE COURT RULES — ADJUDICATIVE PHASE — PROBATION.

The rules relative to the adjudicative phase of a juvenile proceeding are not applicable to a probation revocation hearing, since the juvenile court has already determined the question of jurisdiction over the child.

4. INFANTS — CONSTITUTIONAL LAW — DUE PROCESS — PROBATION — APPEAL.

The failure to comply with procedural due process requirements relative to the incarceration of a juvenile charged with probation violation do not require vacation of the juvenile court's determination of probation violation where the failure to comply with those requirements did not result in any prejudice to the juvenile.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Olga Agnello-Raspa,* Assistant Prosecuting Attorney, for the people.

*Richard D. Korn,* for Lamont Madison.

Before: CYNAR, P.J., and BEASLEY and R. E. ROBINSON,* JJ.

PER CURIAM. Defendant appeals as of right from an order entered by the Wayne County Probate Court denying his petition for rehearing and review.

Lamont Madison came to the attention of the juvenile court on May 19, 1981, on a petition charging him with unlawfully delivering two packets of herion to plainclothed police officers. The referee put defendant on probation and assigned him 30 hours of community service.

Madison appeared before the referee again the following year on charges of truancy, disorderly conduct, and criminal sexual conduct in the first degree. Madison pled guilty to truancy and disorderly conduct on August 23, 1982. A trial date of November 15, 1982, was set for the criminal sexual conduct charge. Madison did not show up for his trial.

On March 16, 1983, Madison appeared in juvenile court again for violation of his probation. He pled guilty to a new charge of possession of herion and the criminal sexual conduct charge was dropped. Madison was placed on intensive probation.

Eight months later, on November 23, 1983, Mad-

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

ison was again before the hearing referee for violation of probation for curfew violation, as well as pretrial on a new matter, auto theft, possession of stolen property over $100, and fleeing and eluding. After a hearing, the referee recommended that Madison be committed to the Maxey Boys Training School.

Madison's counsel petitioned the probate court for review of that hearing. After hearings on the petition, the probate judge rejected the allegations of error and accepted the recommendation of the referee to commit Madison to the Maxey Boys Training School.

I

Madison's first argument on appeal centers on errors alleged to have occurred at the May 19, 1981, hearing where he pled guilty to a charge of being a disorderly person. Madison never appealed that disposition. His current appeal is taken only from the probation revocation. Since Madison could have appealed his original disposition as of right, this appeal as of right following the determination of a probation violation and the placement in a training facility must necessarily be limited to those matters relating to the probation violation and the hearing thereon. *People v Pickett,* 391 Mich 305, 316; 215 NW2d 695 (1974). Indeed, Madison was not entitled to challenge his underlying disposition even at the probation revocation hearing. *People v Irving,* 116 Mich App 147, 150; 321 NW2d 873 (1982).

Madison urges us to expand the holding of *People v Crawford,* 417 Mich 607; 339 NW2d 630 (1983), which permits collateral attacks on the constitutional validity of an underlying guilty plea during an habitual offender proceeding. Since the

rule of *Pickett* more directly applies to this case, we decline to extend *Crawford* to this situation.

## II

Madison's other contention on appeal is that his pretrial detention in 1983 was unconstitutional. He argues that he was not given a timely preliminary hearing, and that he was detained 53 days without bond without a showing of probable cause, all in violation of the Juvenile Court Rules.

JCR 1969, 4.2(A) states:

"Preliminary hearings as herein provided shall be conducted in all proceedings in which children are taken into custody prior to hearing and are not released to their parent or parents, guardian or custodian. In such instances the hearing shall be held not more than 48 hours after the child has been taken into court custody, not excluding weekends and holidays."

At the hearing, the referee shall determine from the complaint and investigation if there are grounds for authorizing a petition and for detention. JCR 1969, 4.2(B)(6). On a showing of probable cause to believe that the child committed the offense, the judge or referee may order detention of the child pending hearing. JCR 1969, 4.2(B)(7)(b). The court may order detention for a child who commits a serious offense against society or another person, and the child may be detained in an approved detention facility when the child is on probation and a supplemental petition has been filed with the court. JCR 1969, 3.1(A)(2). In the event detention is ordered, the court shall advise the parent of the child of the right to a bond. JCR 1969, 4.2(B)(9). In a hearing on a probation violation, the same procedure as for an original petition

must be followed, except there is no right to jury trial. JCR 1969, 9.2.

In this case, a violation of probation petition was filed against Madison on August 12, 1983, and a pretrial hearing was set for September 27, 1983. Madison was notified but failed to appear at the pretrial hearing. The probate court then issued an order of apprehension pursuant to MCL 712A.2c; MSA 27.317(598.2c), which authorizes a probate judge to issue an order to apprehend a child who has failed to appear for a hearing on a petition charging violation of the law. The order commanded that Madison be brought before the court or the Wayne County Youth Home. Although Madison claims he was apprehended on October 1, 1983, the writ is dated, and was filed on, October 3, 1983.

Although it is thus not clear from the file when Madison was placed in the Wayne County Youth Home, the prosecutor concedes that the 48-hour rule of JCR 1969, 4.2(A) was not complied with in this case. The preliminary hearing was not held until October 11, 1983, and no testimony was taken at that hearing. The written report indicates only that the referee complied with the procedural requirements of JCR 1969, 8.2, and set a trial date for November 23, 1983.

Apparently Madison's mother was present at this hearing, as she had been at the September 27 hearing which Madison missed. She reportedly asked the referee what she could do to secure her son's release, and was told that, because her son failed to appear at the previous pretrial, she could not remove her son from the Youth Home and that he would have to stay in the Youth Home without bond until the trial date.

The motion by Madison's counsel to dismiss based on these alleged errors was denied at the

outset of the November 23 hearing. The referee simply stated that when an order of apprehension issues, and the boy is apprehended, he may be held without bond pending his hearing. We have been unable to find any law to support this position.

It thus appears that some of the actions taken in this case did not comply with the procedures spelled out in the Juvenile Court Rules. Madison was not given a hearing within 48 hours after he was taken into custody, there is no indication that the court-ordered detention was based on probable cause, and he was denied bond. Although these errors occurred in the context of a probation revocation and not an original proceeding, the rules nevertheless apply. JCR 1969, 9.2.

However, Madison's notion that the 42-day rule found in JCR 1969, 8.1 was violated in his case was dispelled by this Court in *In the Matter of Sharman Scruggs,* 134 Mich App 617; 350 NW2d 916 (1984). The rule provides that the adjudicative phase must be docketed and heard within 42 days after the conclusion of the preliminary hearing if the child has been detained. The *Scruggs* Court ruled that juveniles are not entitled to adjudicative hearings for violation of probation:

"At the adjudicative phase, the juvenile court determines whether a child comes within the jurisdiction of the court. Clearly, where a juvenile is before the court for having· violated terms of the probation upon which he was placed by that same court, jurisdiction has already been determined and the adjudicative phase is no longer necessary." 134 Mich App 621.

In light of the procedural errors which occurred prior to Madison's probation revocation hearing, the next question is the appropriate remedy. Madison urges that the order revoking his probation be vacated. He relies on cases holding that due pro-

cess requires a determination of probable cause prior to pretrial detention. *Gerstein v Pugh,* 420 US 103; 95 S Ct 854; 43 L Ed 2d 54 (1975); *People v Sweet,* 124 Mich App 626; 335 NW2d 110 (1983). However, neither of these cases directed reversal for noncompliance, nor did they concern detention prior to a probation revocation hearing.

Madison is not objecting to anything which occurred at the probation revocation hearing itself; nor does he suggest that the errors which preceded that hearing deprived the court of jurisdiction. (That argument would fail. *In the Matter of Bennett,* 135 Mich App 559; 355 NW2d 277 [1984].) He contends only that he was deprived of due process.

The whole range of due process rights associated with criminal trials does not apply to probation revocation proceedings. *Gagnon v Scarpelli,* 411 US 778; 92 S Ct 1756, 36 L Ed 2d 656 (1973); *People v Gladdis,* 77 Mich App 91, 96; 257 NW2d 749 (1977). The *Gladdis* Court held that a defendant whose probation was revoked is not entitled to relief for failure to hold a probable cause hearing unless he was prejudiced thereby. *Gladdis, supra,* p 95; accord, *People v Irving, supra,* p 151. This Court has also found no due process violation when a defendant receives notice of a probation revocation hearing just one day prior to the hearing, *People v McNeil,* 104 Mich App 24; 303 NW2d 920 (1981), which explains why cases finding a due process violation *prior* to a probation revocation hearing are rare, if not non-existent. Where a due process error concerning probation revocation is found, the case is remanded for a new probation revocation hearing. See, *e.g., People v Taylor,* 104 Mich App 514; 305 NW2d 251 (1981); *People v Bell,* 67 Mich App 351; 241 NW2d 203 (1976), *lv den* 397 Mich 807 (1976). Such relief would serve no purpose in this case.

Probation is a matter of grace, not of right. MCL 771.4; MSA 28.1134; *People v Rial,* 399 Mich 431, 437; 249 NW2d 114 (1976). While the errors complained of infringed on Madison's right to due process, they are not of such magnitude as to compel us to vacate the subsequent order revoking his probation. Madison has not alleged any prejudice resulting from these errors, nor can we conceive of any. We quote with approval this Court's remarks about due process in another case concerning revocation of a juvenile's probation:

"While we agree that juveniles are entitled to due process of law, see *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970); *In re Gault,* 387 US 1; 87 S Ct 1428; 18 L Ed 2d 527 (1967), we find no due process violation here. Presumably appellant was given all the due process protection incorporated within the requirements for an adjudicative hearing at the initiation of juvenile court proceedings when he was found to have committed larceny from a person. Once the juvenile court found that appellant had indeed violated the statute prohibiting larceny, it had continuing jurisdiction over appellant until he was 19 years old. MCL 712A.2a; MSA 27.3178(598.2a). Probation, a matter of grace rather than a right owned by appellant, was discretionary with the juvenile court. MCL 712A.18; MSA 27.3178(598.18). Although not specifically enunciated in the juvenile code, the juvenile court is free to revoke probation upon a violation of its terms. See JCR 1969, 9.2." *In re Scruggs, supra,* pp 621-622.

Affirmed.